IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

JANET WINSTON, )
        Plaintiff, )
)
v. ) Civil Acton No. 07-1699
)
)
COMMISSIONER OF SOCIAL )
SECURITY, )
        Defendant. )

## MEMORANDUM AND ORDER

MITCHELL, M.J.

Presently before the Court for disposition are cross motions for summary judgment. For the reasons that follow, the plaintiff's motion for summary judgment (Docket No.11) will be denied; the defendant's motion for summary judgment (Docket No.13) will be granted; the determination of the Commissioner will be affirmed and judgment entered accordingly.

On December 13, 2007, Janet Winston, by her counsel, filed a complaint pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. §405(g) for review of the Commissioner's final determination disallowing her claim for a period of disability or for disability insurance benefits under Sections 216(i) and 223 of the Social Security Act, as amended, 42 U.S.C. §§416(i) and 423.

On December 3, 2003, the plaintiff filed an application for disability benefits alleging that she had been disabled since August 1, 1999 (R.70-72A), and benefits were denied on March 3, 2004 (R. 243-246). On April 22, 2004, the plaintiff requested a hearing (R.65, 106-107, 247-248)) and pursuant to that request a hearing was held on August 4, 2005 (R.342-370). In a

decision dated November 8, 2005, benefits were denied (R.23-31), and reconsideration was requested (R.11). Upon reconsideration and in a decision dated September 27, 2006, the Appeals council remanded the matter for further consideration (R.239-241). A second hearing was held on January 3, 2007 (R.371-395) and in a decision dated January 31, 2007, benefits were again denied (R.12-22). Upon review and in a decision dated October 17, 2007, the Appeals Council affirmed the prior determination (R.7-9). On December 13, 2007, the instant complaint was filed.

In reviewing an administrative determination of the Commissioner, the question before any court is whether there is substantial evidence in the agency record to support the findings of the Commissioner that the plaintiff failed to sustain his burden of demonstrating that he was disabled within the meaning of the Social Security Act. Richardson v. Perales, 402 U.S. 389 (1971); Adorno v. Shalala, 40 F.3d 43 (3d Cir. 1994).

It is provided in 42 U.S.C. Section 405(g) that:

The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing. The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive....

Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)." Richardson v. Perales, supra., at page 401; Plummer v. Apfel, 186 F.3d 422 (3d Cir. 1999).

At the hearings held on August 4, 2005 and January 3, 2007, (R.342-395), the plaintiff appeared with counsel (R.344, 373) and testified that she was born on August 25, 1962 (R.346);

2

that she earned a GED (R.347); that she is a certified nurse's aide (R.367), and that she has not worked since August 1, 1999 (R.347, 375-376).

In addition the plaintiff testified that she is being treated for depression, leg and back pain and asthma (R.349,352, 356, 378, 384); that she takes medication for her asthma and depression (R.351,358); that she had back surgery in February 1999 (R.365); that in June of 2002 she was unable to lift anything, sit more than ten minutes and walk for more than twenty minutes (R.359-360, 386); that her back pain had decreased slightly (R.362); that she had trouble sleeping prior to June, 2002 (R.363-364); that she rests during the day (R.364); that she sleeps poorly and is forgetful (R.380); that she stays at home (R.380, 388); that she has no desire to do anything (R.381); that she is constantly irritable and suffers daily anxiety attacks (R. 382); that she has frequent headaches (R. 382) and that her medication causes drowsiness (R.384).

At the hearings, vocational experts were also called upon to testify. The plaintiff's prior work was categorized as medium to heavy semi-skilled work (R.367, 390). When asked to assume an individual of the claimant's age, education and work history who was restricted to sedentary work. The witnesses testified that she could not return to her prior work as a nurse's aide (R.368, 392). However, the witnesses also testified that there were other jobs such an individual could perform (R.368, 392), but that if she had to rest during the workday, she could not be so employed (R.369, 393).

The issue before the Court for immediate resolution is a determination of whether or not there is substantial evidence to support the findings of the Commissioner that the plaintiff was not disabled within the meaning of the Act.

The term "disability" is defined in 42 U.S.C. Section 423(d)(1)(A) as:

3

inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months....

For purposes of the foregoing, the requirements for a disability determination are provided in 42 U.S.C. Section 423(d)(2)(A):

An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence ... "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

A "physical or mental impairment" is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. Section 423(d)(3). These provisions are also applied for purposes of establishing a period of disability. 42 U.S.C. Section 416(i)(2)(A).

While these statutory provisions have been regarded as "very harsh," nevertheless, they must be followed by the courts. NLRB v. Staiman Brothers, 466 F.2d 564 (3d Cir. 1972); Choratch v. Finch, 438 F.2d 342 (3d Cir. 1971); Woods v. Finch, 428 F.2d 469 (3d Cir. 1970). Thus, it must be determined whether or not there is substantial evidence in the record to support the conclusion of the Commissioner that the plaintiff was not disabled within the meaning of the Social Security Act.

For this purpose, certain medical evidence was reviewed.

On November 14, 1997, the plaintiff was evaluated by Susan L. Deakin, D.O. for multiple kidney lesions, remote history of asthma, history of low back injury and three weeks of malaise and anorexia. She was treated with antibiotics and fluids (R.118-124).

In a report dated February 6, 1998, Dr. Marc R. Gignac concluded that the plaintiff's back pain was probably neuromuscular and that her kidney lesions did not require intervention (R.125-129).

The plaintiff was treated by J.K. Eshleman, D.O. between February 24, 1998 and September 18, 2000 for asthma, pain and lumbar stiffness. Severe degenerative disc disease with severe disabling symptoms were noted (R.203-226).

In a mental status questionnaire completed by Shirley Baron, Ph.D. concerning treatment between February 18, 2002 and September 18, 2002, she noted a single episode of a moderate major depression and post-traumatic stress disorder with anxiety resulting from the murder of the plaintiff's mother in August 1999. Marked functional limitations were noted (R.279-293).

The plaintiff last met the special earnings requirements of the Act on June 30, 2002 (R.17).

The plaintiff was treated by Dr. Jack Kabazie between August 27, 2002 and October 28, 2002 and epidural steroid injections were administered on two occasions for low back pain (R.130-132).

Radiology studies performed between January 3, 2003 and January 9, 2003 revealed postoperative changes at L4-L5 consistent with an anterior underbody fusion (R.133-136).

The plaintiff was treated by Dr. Mark R. Foster between January 16, 2003 and September 11, 2003 for pain management (R.137-141).

The plaintiff was treated by Dr. Bernadette Harris between July 19, 2000 and January 15, 2003 for chronic lower back pain, asthma and depression. Changes due to moderate degenerative osteoarthritis in her knees were noted (R.142-155).

The plaintiff received physical therapy at NovaCare Rehabilitation between January 8, 2004 and January 15, 2004 (R.156-165).

In a report dated January 16, 2004, Judy Knapp, Ph.D. diagnosed a major depressive disorder and post bereavement stress disorder. The plaintiff's symptoms were said to be mild to moderate and her prognosis was guarded (R.166-174).

In a report of a consultative examination conducted on January 22, 2004, Linda Rockey, Psy.D. diagnosed history of post traumatic stress disorder, panic disorder with agoraphobia and a recurrent major depressive disorder with mild paranoia. The plaintiff's prognosis for return to work was guarded and considered unlikely. The plaintiff's response to work pressure and changes to work routine were regarded as marked (R.175-182).

In a psychiatric review performed on February 26, 2004, the plaintiff's impairment was said to be not severe. A major depressive disorder, pain disorder with agoraphobia and post traumatic stress disorder were noted. Limitations were said to be mild (R.183-195).

In a report dated June 8, 2005, Judith Knapp, Ph.D. observed that the plaintiff's grieving over her mother's death was continuing; that she was better able to manage her panic attacks; that her anxiety and depression were slow to improve and that her social network had constricted (R.201-202).

On January 3, 2006, the plaintiff's husband wrote that she is depressed most of the day; that she does not go out and that he did not believe she could work (R.271).

The plaintiff had twenty psychotherapy sessions between February 1, 2005 and April 14, 2006 with Judith Knapp, Ph.D. who diagnosed "post-traumatic stress disorder and major depressive disorder. She has frequent rages and is unable to manage these episodes which are triggered by minor events. She is socially withdrawn because she cannot tolerate the stimulation of more than minimal social interaction" (R.339).

The plaintiff was treated between January 26, 2005 and November 27, 2006 by Dr. Bernadette Harris for a rash, asthma, lower right back pain, depression and knee pain (R.294-338).

In reviewing a disability claim, in addition to considering the medical and vocational evidence, the Commissioner must consider subjective symptoms. Baerga v. Richardson, 500 F.2d 309 (3d Cir. 1974). As the court stated in Bittel v. Richardson, 441 F.2d 1193, 1195 (3d Cir. 1971):

> Symptoms which are real to the claimant, although unaccompanied by objective medical data, may support a claim for disability benefits, providing, of course, the claimant satisfies the requisite burden of proof.
>
> In Good v. Weinberger, 389 F. Supp. 350, 353 (W.D. Pa. 1975), the Court stated: Bittel seeks to help those claimants with cases that so often fall within the spirit-- but not the letter--of the Act. That plaintiff did not satisfy the factfinder in this regard, so long as proper criteria were used, is not for us to question.

The applicable regulations require more explicit findings concerning the various vocational facts which the Act requires to be considered in making findings of disability in some cases. The regulations, published at 20 C.F.R. §§404.1501, et seq., set forth an orderly and logical sequential process for evaluating all disability claims. In this sequence, the Administrative Law Judge must first decide whether the plaintiff is engaging in substantial gainful activity. If not, then the severity of the plaintiff's impairment must be considered. If the

impairment is severe, then it must be determined whether he meets or equals the "Listings of Impairments" in Appendix 1 of the Regulations which the Commissioner has deemed of sufficient severity to establish disability. If the impairment does not meet or equal the Listings, then it must be ascertained whether he can do his past relevant work. If not, then the residual functional capacity of the plaintiff must be ascertained, considering all the medical evidence in the file. The finding of residual functional capacity is the key to the remainder of findings under the new regulations. If the plaintiff's impairment is exertional only, (i.e. one which limits the strength he can exert in engaging in work activity), and if his impairment enables him to do sustained work of a sedentary, light or medium nature, and the findings of age, education and work experience, made by the Administrative Law Judge coincide precisely with one of the rules set forth in Appendix 2 to the regulations, an appropriate finding is made. If the facts of the specific case do not coincide with the parameters of one of the rules, or if the plaintiff has mixed exertional and non-exertional impairments, then the rules in Appendix 2 are used as guidelines in assisting the Administrative Law Judge to properly weigh all relevant medical and vocational facts.

> Based on the evidence presented, and following remand, the Commissioner concluded:
>
> The claimant last met the insured status requirements of the Act on June 30, 2002...
>
> I have again evaluated the claimant's back and knee problems under the [relevant] criteria ... but the specific findings required by the section are not present on this record. The additional evidence includes treatment notes from Bernadette Harris, M.D. for the period January 2004 through November 2006, that is, beginning two and one-half years after the date last insured. The notes are somewhat fragmentary and note various physical problems and depression but provide no evaluations. In my earlier decision, I considered Dr. Harris's notes for the period July 2002 through January 2004 which are similar to her later notes. Her examinations of the claimant's knee in July 2000 showed moderated degenerative "osteoarthritis-type"

changes. I also considered treatment notes from Joseph Eshleman, D.O. from February 1998 through September 2000, the only other evidence covering the period from the alleged onset of disability until the date last insured. As I discussed in my earlier decision, Dr. Eshleman examined the claimant six times during the relevant period ... In the first five examinations, he noted back pain but his examination findings were routine. In June 2000 he found moderate-to-marked muscle guarding and moderate palpatory tenderness in the lumbo-sacral area. These findings and the relevant evidence from Dr. Harris fall short of showing impairments of listing severity or that would prevent the claimant from performing the limited range of sedentary exertion specified in the residual functional capacity adopted here.

As in my earlier decision, I have evaluated the claimant's depression and anxiety under the criteria of listed impairments ... As before, I find that the claimant's mental impairments included the symptoms required by part A of the listings but that the claimant did not exhibit a marked or equivalent limitation in two (in fact, in any) of the four categories set out in part B of the listings. I find that the claimant had a mild restriction in her activities of daily living attributable to a mental impairment. At the earlier hearing she testified that she lived with her husband, as she does now, and the record does not show meaningful shortcomings in this area. I find that she had moderate difficulty in social functioning. She had a limited social life and was bereaved over her mother's passing in 1999, which appears to have aggravated her depression and anxiety, but the record does not show a serious incident with family, friends, or authority figures. In any event, the [residual functional capacity] adopted here specifies no more than occasional contact with coworkers or supervisors and no contact with the public, which I consider to me a sufficient accommodation. I find that the claimant had moderate difficulty maintaining concentration, persistence, and pace. The claimant's depression and anxiety reasonably may have been expected to limit her in these areas but not to the point that she was incapable of the simple, low-stress tasks specified in the [residual functional capacity]. As before, the record does not show repeated episodes of decompensation, each of extended duration. In fact, there was none during the relevant period, which attests to a lack of disabling severity.

I noted in my earlier decision that the evidence before the date last insured did not mention a mental impairment, and I discussed evidence after that date from Bernadette Harris, M.D. who listed depression beginning in April 2003 and on three later occasions but did not list symptoms or limitations from the condition. Judy Knapp, Ph.D. in January 2004 summarized her treatment of the claimant for depression, bereavement, and post-traumatic stress disorder from January 2003 to January 2004 but provided no notes or records. In September 2004, Dr. Knapp completed a form on which she stated that the claimant had been disabled by depression since January 21, 2003, the date of her first visit to Dr. Knapp and over six months after the date last insured. In my earlier decision, I was willing to infer

from the form that the claimant's symptoms were severe as of June 30, 2002, but
not that they were of listing severity. Dr. Knapp has now submitted a letter, dated
January 19, 2007 summarizing her treatment of the claimant from February 2005
through April 2006. Again, no treatment notes or records have been provided. I do
not find the summary sufficient to change my conclusions for the relevant period.

The claimant has now submitted a questionnaire dated December 15, 2005, and
treatment notes from February 18 through September 18, 2002, from Shirley
Barron, Ph.D. The notes discuss some family issues facing the claimant and also
refer to some physical problems. They mention some symptoms, such as stress
and fatigue, and include forms on symptoms filled out by the claimant, but in the
notes Dr. Barron does not provide a specific diagnosis or evaluate the severity of
the symptoms. In the December 2005 questionnaire, completed about two and
one-half years after the date last insured and over two years after she last treated
the claimant, Dr. Barron includes major depressive disorder, moderate, single
episode; post-traumatic stress disorder, and complete bereavement in her
diagnoses, "based on the pt's report of history and symptoms, my assumption is
that depression and anxiety began in 8/99 @ the time of mother's death." She
finds that the claimant had marked limitations in her activities of daily living,
social functioning, concentration, persistence, and task persistence and concludes
that the claimant could not sustain work activity. I do not find Dr. Barron's
opinion controlling for the relevant period. Her treatment notes indicate some
symptoms but do not suggest the severity indicated in the form. During the
relevant period, the claimant was not hospitalized and did not require emergency-
room treatment for an exacerbation of her mental symptoms. The [residual
functional capacity] provides for the simplest of tasks, rules out strict production
quotas, and keeps the claimant's contact with others in the workplace to a
minimum. I find that these provisions address adequately the symptoms identified
by Dr. Barron during the relevant period.

Through the date last insured, the claimant had the residual functional capacity to
perform work that does not require: exertion above the sedentary level; or more
than simple, routine, repetitive tasks, with one-or two-step instructions; or strict
production quotas ...(R.17-19).

In order to be entitled to benefits, the plaintiff must demonstrate that she was disabled on

or before June 30, 2002, the date on which she last met the special earnings requirements of the

Act (R.17). This is a difficult task. The record demonstrates that the plaintiff was not suffering

from a physical disability on or before that date. A more difficult evaluation is her mental status

on or before that date. There is no question that she was traumatized by the murder of her mother

10

in 1999, but there is no medical evidence which would support her claim, that following that incident she was mentally disabled. Rather, the mental evidence of the plaintiff's condition arises substantially after that date, and attempts to relate some of her claims to the time prior to June 30, 2002. Since the Administrative Law Judge is charged with accessing credibility, and he found these supports unconvincing, his ultimate conclusion is supported by substantial evidence, and the Commissioner's determination that the plaintiff is not entitled to benefits is supported by the record and should be sustained.

Summary judgment is appropriate when there are no disputed material issues of fact, and the movant is entitled to judgment as a matter of law. <u>Biener v. Calio</u>, 361 F.3d 206 (3d Cir. 2004). In the instant case, there are no material factual issues in dispute, and it appears that the Commissioner's conclusion is supported by substantial evidence.

Accordingly, the plaintiff's motion for summary judgment will be denied; the defendant's motion for summary judgment will be granted; the determination of the Commissioner will be affirmed and judgment will be entered accordingly.

                 s/ROBERT C. MITCHELL,

                 United States Magistrate Judge

Dated: August 5, 2008

ORDER

AND NOW, this 5th day of August 2008, for the reasons set forth in the foregoing Memorandum,

IT IS ORDERED that the plaintiff's Motion for Summary Judgment (Docket No.11) is denied; that the defendant's Motion for Summary Judgment (Docket No.13) is granted, and the determination of the Commissioner is affirmed.

                                                                                 s/Robert C. Mitchell,

                                                                                 United States Magistrate Judge